IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VICTORIA GILKERSON, individually | § | |
| and on behalf of all others | § | |
| similarly situated, and BLIND | § | |
| AMBITIONS GROUPS, on behalf of | § | |
| its members and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-13-0132 |
| | § | |
| THE CHASEWOOD BANK, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

The above referenced putative class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) alleges that Defendant The Chasewood Bank ("Chasewood") failed to make its automated teller machine ("ATM"), located at 8500 Cypresswood Drive, Spring, Texas 77379, accessible to blind and visually impaired individuals by adding required voice guidance and universal tactile key pads, *inter alia*, in violation of Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, its implementing regulations (28 C.F.R. §§ 36.101, *et seq.*), the Texas Human Resource Code (the "THRC"), Tex. Hum. Res. Code Ann. § 121.001, *et seq.*, the Texas Architectural Barrier Act (the "TABA"),

-1-

Tex. Gov't Code Ch. 469,[1] and its Texas Accessibility Standards ("TAS"). Pending before the Court are the following motions: (1) Chasewood's motion to dismiss Plaintiff Victoria Gilkerson's ("Gilkerson's") original Class Action Complaint[2] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)(instrument #7); (2) Chasewood's second motion to dismiss (#9) Gilkerson's First Amended Class Action Complaint[3]; and (3) Chasewood's second amended motion to dismiss (#17) Plaintiff's First Amended Class Action Complaint.

Title III of the ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods and services, facilities, privileges, advantages, or accommodations of any place of public accommodation[4] by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination in violation of the Act includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated

---

[1] Previously Article 9102 of the Texas Revised Civil Statute, which was repealed by Acts 2003, 78th Leg., ch. 1276, § 9005(b), eff. Sept. 1, 2003.

[2] Instrument #1.

[3] Instrument #8.

[4] 42 U.S.C. § 121811(7), lists the types of private entities that are consider public accommodations. Banks are included in § 121811(7)(F).

differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). The House Report on the ADA stated, "The purpose of the ADA is to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life; to provide enforceable standards addressing discrimination against individuals with disabilities; and to ensure that the Federal government plays a central role in enforcing these standards on behalf of individuals with disabilities." H. Rep. No. 101-485, pt. 2, at 22-23 (1990). In a very broad grant of standing, 42 U.S.C. § 12188(a)(1) provides injunctive relief

> to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provision.

The THRC § 121.003(a) provides, "Persons with disabilities have the same right as the able-bodied to the full use and enjoyment of any public facilities in the state." A failure to

"provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility" violates § 121.003(d)(3). Section 121.002(5) defines "public facilities" as including "any other place of public accommodation, amusement, convenience, or resort to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited."   Failure to comply with the TABA and the 2012 TAS requirements is a violation of the THRC § 121.003(d)91).   Standing requirements under the THRC are the same as those under federal law.  *Hunter v. First National Bank Texas*, No. 04:12-CV-00355, 2012 WL 7801699, at *7 (E.D. Pa. Dec. 11, 2012), *citing Tex. Workers Cop. Comm'n v. Garcia*, 893 S.W. 2d 504, 517-18 (Tex. 1995), and *Daimler Chrysler Corp. v. Inman*, 252 S.W. 3d 299, 304-05 (Tex. 2008)(for injury "plaintiff must be personally aggrieved; his alleged injury must be "concrete and particularized, actual or imminent, not hypothetical").   Unlike the ADA, under which private plaintiffs may only obtain injunctive relief, monetary damages are recoverable under the THRC § 121.104(b)(a "person with a disability deprived of his or her civil liberties may maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $100 to the person with a disability.").   *Greer v. Mockingbird Station Partners, L.P.*, No. Civ. A. 302CV2342K, 2004 WL 2544967, at *1 (N.D. Tex. Nov. 9, 2004).   Gilkerson, alone, seek damages

-4-

under the THRC § 121.004(b).

This case is one of many controversial putative class actions proliferating around the country brought often without notice by disabled individuals,[5] who, frequently along with an organization dedicated to the rights of the disabled, are "serial plaintiffs" or "testers"[6] acting as private attorneys general[7] challenging various

_____

[5] A number of commentators have opined that the reason why typically no notice is provided to the defendant is the result of the ADA's remedial limitations, which allow only for injunctive relief and attorney's fees for prevailing plaintiff's counsel if the plaintiff wins a judgment: if plaintiff's attorneys provide notice to the defendant, the business could easily make their premises accessible at minimal cost before or during the litigation and deprive the attorneys of the recovery of fees. *See, e.g.,* Leslie Lee, *Giving Disabled Testers Access to Federal Courts: Why Standing Doctrine Is Not the Right Solution to Abusive ADA Litigation Note,* 19 Va. J. Soc. Pol'y & L. 319, 354 (Winter 2011)' Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 6, 14 (Oct. 2006).

[6] One court has defined an "ADA 'tester'" as "an individual with a disability who repeatedly visits places of public accommodation with the dual motivation of verifying ADA compliance along with availing himself or herself with the goods and/or services available." *McConnell v. Canadian Hills Plaza*, 2014 WL 201102, at *1 n.1 (M.D. Pa. Jan. 16, 2014).
Kelly Johnson, in *Testers Standing Up For Title III of the ADA*, 29 Case W. Res. L. Rev. 683, 703 (Spring 2009), argues,

> Tester standing is imperative to ensure that the rights guaranteed by the ADA do not become meaningless abstractions. May people are reluctant to bring lawsuits against businesses for violations of the ADA or are unaware of what constitutes a violation under a very cumbersome and technically detailed statute. Other victims of ADA violations may not have the incentive or the resources to bring ADA lawsuits. Thus testers, as private attorneys general, serve a vital role in redressing the injuries suffered due to violations of Title III of the ADA. Overall, denying injunctive relief

entities' noncompliance in their places of public accommodation with Title III of the ADA, leading to a wide and varied spectrum of judicial decisions addressing complex issues of, and policies regarding, standing.  Because the statute does not authorize an award of damages to a prevailing plaintiff, but only equitable relief and an award of attorneys' fees,[8] concerns about abusive litigation by plaintiffs' lawyers must be balanced against widespread noncompliance with the ADA and inadequate enforcement of the civil rights of individuals with disabilities.  *See, e.g.,*

_____

to individuals who prove they were victims of discrimination, even as testers, weakens and undercuts congressional intent to deter and remedy discrimination through utilization of private individuals to enforce the statute.  The Supreme Court supported the idea of private attorneys general in the employment context, stating: "We have rejected the unclean hands defense 'where a private suit serves important public purposes.'" [citations omitted]

Others complain about the burden and congestion of large numbers of lawsuits filed by serial litigants cluttering up the courts, especially judges in Florida, or argue that serial plaintiffs are the professional pawns of a continuing scheme by lawyers to swindle attorney's fees.  *See, e.g.,* Walter K. Olson, *The ADA Shakedown Racket*, The City Journal (Winter 2004), available at http://www.city-journal.org/html/14_1_the_ada_shakedown.html; *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004); *Footman v. Cheung*, 341 F. Supp. 2d 1218 (M.D. Fla. 2004); *Molski v. Mandarin Tough Restaurant*, 347 F. Supp. 2d 860 (C.D. Cal. 2004), *aff'd in part and dismissed in part*, 500 F.3d 1047 (9th Cir. 2007), *cert. denied*, 555 U.S. 1031 (2008), to be discussed later in this Opinion and Order.

[7] *See* 42 U.S.C. § 12188(a)(1).  The Act also provides for suits to be brought by the United States Attorney General.  42 U.S.C. § 12188(b).

[8] 42 U.S.C. § 12188(a)(1).

Leslie Lee, *Giving Disabled Testers Access to Federal Courts:  Why Standing Doctrine Is Not the Right Solution to Abusive ADA Litigation Note,* 19 Va. J. Soc. Pol'y & L. 319 (Winter 2011); Kelly Johnson, *Testers Standing Up For Title III of the ADA*, 29 Case W. Res. L. Rev. 683 (Spring 2009); Wayne C. Arnold and Lisa Herzog, *How Many Lawsuits Does It Take to Declare an ADA Plaintiff Vexatious?  Apparently More Than Judge Rafeedie Thought,"* 48-JUL Orange County Law. 50 (July 2006)[9]; Samuel R. Bagenstos, *The*

---

[9] This article criticizes Judge Rafeedie's ruling in *Molski v. Mandarin Tough Restaurant*, 347 F. Supp. 2d 860 (C.D. Cal. 2004), *aff'd in part and dismissed in part*, 500 F.3d 1047 (9th Cir. 2007), *cert. denied*, 555 U.S. 1031 (2008), which declared serial ADA plaintiff Jarek Molski a vexatious litigant and ordered his law firm to obtain leave of court before filing any other claims under the ADA.  The article maintains that federal district courts even in California have failed to follow Judge Rafeedie's decision.  On appeal, 500 F.3d at 1061-62, the Ninth Circuit evidenced a more balanced view on serial ADA litigants and distinguished Molski's "trumped up claims of injury":

> [T]he ADA does not permit private plaintiffs to seek damages, and limits the relief they may seek to injunctions and attorneys' fees.  We recognize that the unavailability of damages reduces or removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit under the ADA. . . . As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.  District courts should not condemn serial litigation as vexatious as a matter of course. . . . . For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.  But as important as this goal is to disabled individuals and to the public, serial litigation can become vexatious when, as here, a large number of nearly-identical complaints contain factual allegations that are contrived,

*Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1 (Oct. 2006); and Carrie Becker, *Private Enforcement of the Americans With Disabilities Act Via Serial Litigation:  Abusive or Commendable?*, 17 Hastings Women's L.J. 93 (2006).

On behalf of a class of similarly situated individuals, Gilkerson and Blind Ambitions seek a declaration that Chasewood's ATMs violate federal and state law and an injunction requiring Chasewood to update or replace its ATMs so that they are fully accessible to and independently usable by blind people.

The First Amended Class Action Complaint asserts that this Court has federal question jurisdiction over Plaintiffs' claims under Title III of the ADA pursuant to 28 U.S.C. § 1331 and Title 42 U.S.C. § 12188 (providing for only injunctive relief and no compensatory damages), and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

### Procedural History

Gilkerson originally filed this action on January 17, 2013. On March 6, 2013, Chasewood filed its first motion to dismiss (#7), contending that Gilkerson lacked standing under Rule 12(b)1) to

---

exaggerated, and defy common sense.  False or grossly exaggerated claims of injury, especially when made with the intent to coerce a settlement, are at odds with our system of justice, and Molski's history of litigation warrants the need for a pre-filing review of his claims [citations omitted].

assert all her federal and state law claims and that her complaint (#1) failed to state a claim under Rule 12(b)(6).  To cure the deficiencies of her initial pleading, Gilkerson, instead of responding to the motion, filed her First Amended Class Action Complaint (#8) on March 27, 2013.  This complaint added Plaintiff Blind Ambitions Groups ("BAG").  Chasewood then filed a second motion to dismiss (#9) under Rules 12(b)(1) and 12(b)(6), directed to the new complaint, incorporating #7, and asserting that both Gilkerson and BAG lack standing to assert the federal and state law claims for relief and therefore the Court lacks subject matter jurisdiction under rule 12(b)(1), and that the amended complaint fails to state a claim for relief under Rule 12(b)(6).

On June 14, 2013 Chasewood filed its second amended motion to dismiss (#17) under Rules 12(b)(1) and 12(b)6).  In it Chasewood asserts that since June 14, 2012, Gilkerson has filed twenty-four virtually identical class action lawsuits against various financial institutions under Title III of the ADA and under the THRC (Ex. 1, listing Gilkerson's 24 suits and their status) and asks the Court to take judicial notice of them.  BAG has joined in thirty-three essentially identical suits involving Gilkerson or a few other plaintiffs, including six in the Southern District of Texas.  #17 at p.1.

### Allegations of

### the First Amended Class Action Complaint (#8)

Gilkerson, who is legally blind and has been totally blind since birth, is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the TCHRA, and the TABA.  She states that she is an active member of BAG, a Delaware-based, 501(c)(3) non-profit corporation, registered in the state of Texas, with an active Texas chapter.  BAG has been working in Texas for more than a decade providing educational support and advocating accessibility of goods and services to the blind community.  BAG allegedly "has had to redirect resources to support its efforts related to the enforcement of the laws at issue in this case," i.e., accessibility of the blind to ATMs.  #8 at ¶ 22.  Chasewood is a Texas state bank, a public accommodation under 42 U.S.C. § 12181(7)(F), and a public facility under Tex. Hum. Res. Code Ann. § 121.002(5); it offers banking services through its ATMs.

Title III of the ADA proscribes disability discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and be easily accessible to, and independently usable by, individuals with disabilities.  42 U.S.C. § 12181-89.  Financial institutions that own, operate, control, and or lease ATMs are required under the ADA and The 2010 Standards for Accessible Design ("2010 Standards") to provide ATMs that are fully accessible and independently usable by blind people.  Section 7 of the 2010 Standards, which became fully effective on March 15, 2012 and are enforceable through civil

actions by private plaintiffs, requires ATMs *inter alia* to be speech enabled, to have input controls that are tactilely discernable and function keys with specific tactile symbols, and to provide Braille instructions for initiating the speech mode. These mandatory accessibility features are intended to allow blind and visually impaired people to use ATMS independently, without having to disclose private information to a third party. According to a March 7, 2012 *Wall Street Journal* article, at least 50% of this country's ATMs are not in compliance with these laws. Gilkerson asserts that a significant number of ATMs in Texas do not comply with the 2010 Standards and violate the requirements of federal and state law, many in the geographic zone in which Gilkerson, herself, usually travels each day.

Gilkerson, who claims that she regularly uses banking services available through ATMS if they are accessible to blind people, asserts that after March 15, 2012 she went to Chasewood's ATM at 8500 Cypresswood Drive and found there was no functional voice-guidance feature. She asserts that Chasewood lacks a policy that is reasonably calculated to ensure that its ATMs are fully accessible to and independently usable by visually impaired individuals as required under Section 7 of the 2010 Standards. The complaint asserts, "Consistent with her fiduciary obligations to the class, and consistent with her desire to locate accessible ATMS for her own use, Plaintiff Gilkerson will continue to regularly

visit the ATM in the future." #8, ¶ 14. She further states that she will continue to attempt to use that ATM "because she wants to identify convenient accessible ATM options within the geographic zone that she typically travels as part of [her] everyday and weekly activities, and she wants to increase ATM accessibility for the blind community generally, and in accordance with her fiduciary obligations as a class representative." #8 at ¶ 54. She also alleges that "[a] significant percentage of the ATMs that are located within the geographic zone that Gilkerson typically travels as part of her everyday and weekly activities do not comply with the 2010 Standards and are therefore inaccessible to blind individuals like Plaintiff." *Id*. at ¶ 58. She also asserts in ¶ 56, "An investigation conducted on behalf of Plaintiffs revealed other accessibility violations within Defendant's ATM network," but she fails to identify a single one.

The First Amended Complaint further points out that the TABA was passed "to further the policy of this state to encourage and promote the rehabilitation of persons with disabilities and to eliminate, to the extent possible, unnecessary barriers encountered by persons with disabilities whose ability to . . . achieve maximum personal independence is needlessly restricted." Tex. Gov't Code § 469.001. The TABA charges the Texas Commission of Licensing and Regulation (the "Commission") with adopting "standards, specification, and other rules . . . that are consistent with

-12-

standards, specifications, and other rules adopted under federal law." Tex. Gov't Code § 469.052. In November 2011 the Commission approved the Texas Accessibility Standards (the "TAS"), which apply *inter alia* to "a privately funded building or facility that is defined as a 'public accommodation' by the Americans with Disabilities Act of 1990 (42 U.S.C. § 12181), and its subsequent amendments . . . ," to become effective also on March 15, 2012. Tex. Gov't Code §468.003(4). Chapter 7 (Communication Elements and Features of the 2012) is nearly a replica of the accessibility guidelines for ATMs in the federal 2010 Standards. References in the First Amended Complaint to the 2010 Standards incorporate the parallel measures in the 2012 TAS. Plaintiff points out that while remediation of an architectural barrier at a public accommodation brings it into compliance with the ADA and provides a permanent or long-term response, an addition of, or repair to, a speech enabling function and other related accessibility requirements provided at an ATM of a public accommodation requires periodic monitoring to demonstrate that the public accommodation is not only in compliance in the first place, but also that it remains in compliance. Without injunctive relief, Gilkerson contends that she will be unable to continue to use Chasewood's ATM independently, in violation of her rights under the ADA.

The Court currently does not address the class action allegations as the issue of certification is not yet before it.

### Standards of Review

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, No. 11-10264, 2011 WL 3363872, *1 (5th Cir. Aug. 4, 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3). If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). The reasons behind this practice are to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'". *Id., citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof for a 12(b)(1) motion. *Ramming v. United*

*States*, 281 F.3d 158, 161 (5ᵗʰ Cir. 2001).  In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5ᵗʰ Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned.  *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5ᵗʰ Cir. 2000).  A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5ᵗʰ Cir. 1981).  In a facial attack, allegations in the complaint are taken as true.  *Blue Water*, 2011 WL 52525 at *3, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5ᵗʰ Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction.  *Id., citing Irwin*

*v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).  A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981).  The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists.  *Id.*  The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c).  *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261.  "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist."  *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).  In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[10] has significant authority "'to weigh the

---

[10] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Here Plaintiffs and Defendant have filed extrinsic evidence attached to Defendant's motion to dismiss and Plaintiffs' Opposition, so the Court reviews the dispute as a factual attack.

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the

---

It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id*. To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

-17-

complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).   "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"   *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).   The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.   Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"   *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court state that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949.   The plaintiff must plead specific facts, not merely

conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

"Rule 12(b) is not a procedure for resolving contests about the facts or the merits of a case." *Gallentine v. Housing Authority of City of Port Arthur, Tex.*, ___ F. Supp. 2d ___, Civ. A. No. 1:12-CV-417, 2013 WL 244651, *3 (E.D. Tex. Jan. 22, 2012), *citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:  Civil 2d* § 1356, at 294 (1990).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the

issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

## Standing

Standing is an issue of subject matter jurisdiction that must be found before the merits of a case can be addressed by a court. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998); *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 303 (5th Cir. 2001). Federal subject matter jurisdiction is limited to "cases" and "controversies," thus giving rise to the requirement of standing. U.S. Const. art. III, § 2. The party seeking the exercise of jurisdiction over his claims bears the burden of pleading sufficient facts showing he is the proper party to invoke judicial resolution of his suit. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled on other grounds, City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774 (2004); *Rohm & Haas Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994).

Standing encompasses "both constitutional limitations on

federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 422 U.S. 490, 498 (1975).

For each claim, a plaintiff must demonstrate, as the "irreducible minimum of standing," that he satisfies the three constitutional (Article III) requirements: (1) injury in fact; (2) causation; and (3) redressibility. *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Cox*, 256 F.3d a 303; *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). The injury-in-fact requirement is qualitative, not quantitative. *Cramer v. Skinner*, 931 F.2d 1020, 1027 (5th Cir. 1991). Therefore an "injury in fact" must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A plaintiff demonstrates causation by showing that the injury is "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Cox*, 256 F.3d at 304, *quoting Simon v. Easter Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). To demonstrate redressibility, the plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable [judicial] decision." *Id*.

Even if the plaintiff establishes constitutional standing, the court may consider if he demonstrates prudential standings. *Cibolo*

*Waste*, 718 F.3d at 474 & n.4 ("[P]rudential standing, while not jurisdictional, nonetheless affects justiciability."). Prudential standing requirements are judicially created limits that "encompass 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and a requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibideaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012),*quoting Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *Nat'l Solid Waste Management Ass'n v. Pine Belt Regional Solid Waste Management Authority*, 389 F.3d 491, 498-99 (5th Cir. 2004). Unlike constitutional standing requirements, Congress can modify or waive prudential standing requirements. *Procter & Gamble v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001), *cert. denied*, 534 U.S. 945 (2001).

Some courts have required that a plaintiff seeking injunctive relief under Title III must establish standing by alleging a concrete, particularized, and plausible plan to return to the out-of-compliance public accommodation that discriminated against her. In *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997), the Fifth Circuit opined, "To obtain standing for injunctive relief, a plaintiff must show that there is a reason to believe

-23-

that he would directly benefit from the equitable relief sought. In other words, a plaintiff must face a threat of present or future harm [citation omitted]." Therefore Gilkerson must plead facts demonstrating that she intends, and is likely, to return to Chasewood's ATM by pointing to such factors as its proximity to her home, her past patronage, the frequency of her travel near that ATM, and her concrete plans to do so and when. *Davis v. First Nat'l Bank of Trenton*, No. 4:12-CV-396, 2012 WL 7801707, at *8 (E.D. Tex. Dec. 2012, *citing Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.*, No. Civ. A. 3:05-CV-1307-G, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005)("'[S]omeday intentions'-- without any description of concrete plans, or indeed even any specification of *when* the some day will be--do not support a finding of the 'actual or imminent' injury that our cases require.'")(*quoting Lujan*, 504 U.S. at 564); *Hunter v. Branch Banking and Trust Co. ("Hunter II")*, Civ. A. No. 12-CV-2437-D, 2013 WL 4052411, at *2, 4 (N.D. Tex. Aug. 12, 2013)("[W]hat constitutes a sufficiently concrete plan to return must be evaluated in context. For example, where the allegedly infringing site is many miles away or requires reservations, it is reasonable to require more than a statement that the plaintiff intends to return in the future. But where the allegedly infringing site is an ATM in an area the plaintiff frequently visits, it is unreasonable to impose similar requirements.").

-24-

The district court in *Norkunas v. Park Rd. Shopping Center, Inc.*, 777 F. Supp. 2d 998, 1005 (W.D.N.C. 2011), *aff'd*, 474 Fed. Appx. 369 (4th Cir. July 6, 2012), held  that "the law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise."  It further opined that "the naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing." *Id.*  At issue here is whether Gilkerson's standing to sue for discrimination under Title III of the ADA is undermined because she has filed multiple similar suits, many with BAG as co-plaintiff, and may have only the status of a "tester," whose motive is to return to the Defendants's public accommodation to verify its compliance with the ADA, rather than as a customer. Recently in *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013),[11] the Eleventh Circuit ruled that the tester status of the plaintiff, who had twice visited the Presidente Supermarket and found it noncompliant with the ADA and who traveled to the locality "on a regular basis" because his lawyer's offices were nearby and he "definitely" expected to visit the lawyer "in the near future" even though he lived 30.5 miles away, did not preclude his having standing for his claim under 42 U.S.C. §§

---

[11] Both sides bring this case to the Court's attention in their supplemental pleadings (#35 and 37).

-25-

12182(a),[12] 12182(b)(2)(a)(iv),[13] and 12188(a)(1)[14] of Title III. Several courts have found that where a plaintiff is a frequent or serial litigant challenging various defendants' ADA compliance and has mixed motives, i.e., seeking to avail himself personally of services provided by an ATM machine and verifying ADA compliance, his standing to sue is not affected if it otherwise existed. *See, e.g., Garner v. VIST Bank*, 2013 WL 6731903, at *7 (E.D. Pa. Dec. 20, 2013), *citing Clark v. McDonald's Corp.*, 213 F.R.D. 198, 227-28 (D.N.J. 2003); *Marod Supermarkets*, 733 F.3d at 1332-34; *Klaus v. Jonestown Bank and Trust Co.*, Civ. A. No. 1:12-CV-2488, 2012 WL 4079946, at *7 (M.D. Pa. Aug. 13, 2013); *Harty v. Burlington Coat Factory of Pennsylvania, LLC*, Civ. A. No. 11-01923, 2011 WL 2415169, at *8 (E.D. Pa. June 16, 2011); and *Access 4 All, Inc. v. Absecon Hospitality Corp.*, Civ. A. No. 04-6060 (JEI), 2006 WL 3109966, at *7 (D.N.J. Oct. 30, 2006). *In accord, Access for The*

---

[12] Section 12182(a) provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or lease to) or operates a place of public accommodation."

[13] Section 12182(b)(2)(A)(iv) defines "discrimination" as to public facilities *inter alia* as "a failure to remove architectural barriers, and communications barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

[14] Section 12188(a)(1) states, "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

*Disabled, Inc. v. First Resort, Inc.*, No. 8:11-cv-2342-T-30EAJ, 2012 WL 2917915, at *2 (M.D. Fla. July 17, 2012).  District courts in the Fifth Circuit have agreed.  *Hunter II*, 2013 WL 4052411, at *5 n.8; *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 704, 709 (W.D. Tex. 2010)("The fact that a disabled plaintiff in a Title III case is a tester does not change the analysis or outcome)(*citing Havens Realty Corp.*, 455 U.S. at 374)(regarding a tester in a Fair Housing Act case).

A number of courts have rejected the "intent to return" or "likely to return" theory as the only way to demonstrate standing for injunctive relief on the grounds that "the odds of the injury recurring are certain where a building is not in compliance with the ADA" and any person "with the same disability" will face the same barrier on any visit.  Instead, some courts apply the "deterrent effect doctrine," which holds that an individual suffers an injury-in-fact sufficient to confer standing if he is deterred from visiting a public accommodation because it is not in compliance with the law; plaintiffs need not engage in the "futile gesture" of returning to a building with known barriers that the owner does not intend to remedy.[15]  *See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 949-50 (9th Cir.

_____

[15] The deterrence effect theory is grounded in language of the ADA stating that a plaintiff does not have to "engage in a futile gesture if such person has actual notice that a person or organization does not intend to comply" with the statute.  *Hunter II*, 2013 WL 4052411, t *3, quoting 42 U.S.C. § 12188(a)(1).

-27-

2011)("Demonstrating an intent to return to a noncompliant
accommodation is but one way for an injured plaintiff to establish
Article III standing to pursue injunctive relief.  A disabled
individual also suffers a cognizable injury if he is deterred from
visiting a noncompliant public accommodation because he has
encountered barriers related to his disability there."); *Disabled
Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d
60, 64 (1st Cir. 2005)("'[A] disabled individual who is currently
deterred from patronizing a public accommodation due to a
defendant's failure to comply with the ADA' and 'who is threatened
with harm in the future because of existing or imminently
threatened noncompliance with the ADA' suffers actual or imminent
harm sufficient to confer standing.'"); *Steger v. Franco*, 228 F.3d
889, 892 (8th Cir. 2000)("Although plaintiffs need not engage in the
'futile gesture' of visiting a building containing known barriers
that the owner has no intention of remedying . . . they must at
least prove knowledge of the barriers and that they would visit the
building in the imminent future but for those barriers."); *Hunter
II*, 2013 WL 4052411, at *3 ("The second recognized way to establish
injury-in-fact is for the plaintiff to show that she is continually
injured by being deterred from making use of the allegedly
noncompliant public accommodation. . . . '[A] plaintiff who is
deterred from patronizing a store suffers the ongoing actual injury
of lack of access to the store."); *Betancourt v. Federated Dep't*

*Stores*, 732 F. Supp. 3d 693, 709 (W.D. Tex. 2010)("[T]he Supreme Court recognized deterrence as an injury in fact sufficient to confer standing for prospective relief in *Friends of the Earth, Inc. v. Laidlaw Envt'l Services*, 528 U.S. 167 (2000)"; "[T]he risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant.  If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made compliant.").  *See also Fiedler v. Ocean Props., Ltd.*, 683 F. Supp. 2d 57, 69 (D. Me. 2010); *Scherr v. Marriot Intern., Inc.*, 833 F. Supp.2d 945, 952-53 (N.D. Ill. 2011)(Noting that the "'deterrent effect doctrine'--supported by the reasoning of the Ninth, Eighth and First Circuits--is gaining support" and applying it)(*citing Betancourt*).  Just recently, in *Kramer v. Lakehills South, LP*, No. A-13-CA-591 LY, 2014 WL 51153, at *4 (W.D. Tex. Jan. 7, 2014), the district court applied the deterrent effect doctrine and observed,

> The Fifth Circuit appears to have endorsed this theory in *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir, 2011)(a Title II ADA case), *cert. denied*, __ U.S. ___, 132 S. Ct. 1561 . . . (2012), when it stated that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way.").

An organization like BAG may demonstrate that it has standing in two ways:  (1) representational standing or (2) standing on its

-29-

own behalf (a/k/a "organizational standing"). *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 341-42 (1977). It can assert representational standing on behalf of its members by showing that (1) at least one of its members has standing to sue in her own right, (2) it seeks to protect interests that are relevant to its purpose, and (3) the participation of its injured individual members is not required to either bring the cause of action or obtain the relief requested. *Assoc. of Community Organizations for Reform Now v. Fowler ("ACORN")*, 178 F.3d 350, 356 (5th Cir. 1999), *citing Hunt v. Washington State Apple*, 432 U.S. at 342-43.[16] The third element is a prudential requirement, a matter of administrative convenience and efficiency; "in those cases where the claims and relief sought 'appear to support judicially efficient management,' standing will be found. If the relief is injunctive or declaratory and only a small number of individual

---

[16] This three-factor test is known as the *Hunt* test. The third prong is a prudential limitation. *Hunter* , 2013 WL 4052411 at *6, *citing United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996)(regarding the third prong of the *Hunt* test, "the general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limi[t] on the exercise of federal jurisdiction, not a constitutional mandate" and focuses on "matters of administrative convenience and efficiency."). The third prong does not completely bar individual members from asserting claims for injuries; rather "'an association may assert a claim that requires participation by *some* members'" as the issue is whether the individual participation is inconvenient and inefficient. *Id., citing Hosp. Council of Pittsburgh*, 949 F. 2d 83, 89 )(3d Cir. 1991), *cited with approval in Assoc. of Am. Physicians & Surgeons, Inc. v. Texas Medial Bd.*, 627 F.3d 547, 551 (5th Cir. 2010)

members' participation would be necessary, the third prong will be met." *Davis v. First Nat'l Bank of Trenton*, No. 4:12-CV-396, 2012 WL 7801707, at *8 (E.D. Tex. Dec. 2012, *citing Assoc. of Am. Physicians & Surgeons, Inc. v. Texas Medical Bd.*, 627 F.3d 547, 551, 553 (5th Cir. 2010); *Hunter II*, 2013 WL 4052411, at *7 ("[R]equests for declaratory or injunctive relief rarely require individual determinations"), *citing Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 603 (7th Cir. 1993)(stating that declaratory and injunctive relief "will usually inure to the benefit of the members actually injured and thus individualized proof of damages is often unnecessary" and thus will not prevent associational standing). In contrast, damages relief usually prevents associational standing because individualized proof of damages is often necessary. *Hunter II*, 2013 WL 4052411, at *7.

An organization has standing to sue on its own behalf if it first satisfies the same constitutional standards as apply to individuals, i.e., concrete and actual or imminent injury-in-fact that is fairly traceable to the actions of the defendant and that will likely be redressed by a favorable court decision. *ACORN*, 178 F.3d at 356, *citing Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *Texas United for a Safe Economy Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000), *citing Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977), and *Friends of the Earth, Inc. v. Chevron Chemical Co.*,

129 F.3d 826, 827-28 (5th Cir. 1997).  The injury need not be significant and can be an "'identifiable trifle'" *ACORN*, 178 F.3d at 358, *citing Save Our Community v. U.S. Environmental Protection Agency*, 981 F.2d 1155, 1161 (5th Cir. 1992).  The Fifth Circuit has held that the costs of bringing the litigation are not an injury-in-fact that will support standing.  *ACORN*, 178 F.3d at 358-59.  Nor are monitoring costs unless they can be shown to have been traceable to Defendant's conduct or that it would not have undertaken the same efforts had the Defendant not committed the alleged illegal act.  *Id.* at 359.  An organization has standing if "it devotes resources to counteract a defendant's unlawful practices," but not if the "drain on its resources" is not shown to have resulted from the defendant's action.  *Id.* at 360.  *See also Hunter v. Branch Banking and Trust Co. ("Hunter I")*, Civ. A. No. 12-CV-2437-D, 2013 WL 607151, at *3 (N.D. Tex. Feb. 19, 2013)("[A]n organization can show that it has suffered injury-in-fact when it has diverted resources to counteract the defendant's conduct and this diversion has concretely and 'perceptibly impaired its ability to carry out its purpose.")*, citing Havens Realty*, 455 U.S. at 379, and *AHF Cmty. Dev., LLC v. City of Dallas*, 633 F. Supp. 2d 287, 294 (N.D. Tex. 2009).  A statement that "the organization's abstract social interests" were set back is insufficient.  *Id., citing Havens Realty* at 379.  "The mere fact that an organization redirects some of its resources to litigation and legal counseling

in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Id.* at *4, *quoting L.A. ACORN Fair Hous. v. LeBlanc*, 211 F.3 298, 305 (5th Cir. 2000)("holding that organization failed to establish standing where there was no evidence at trial that it was required to put any 'special projects' on hold or 're-double efforts' in response to defendant's conduct").

Even if a plaintiff has standing at the commencement of a suit, if intervening circumstances result in the court's no longer being able to grant meaningful relief to the plaintiff, the case is deemed moot and the federal district court has no constitutional authority to resolve disputes. *Calhoun v. FBI.*, ___ Fed. Appx. ___, No. 13-20094, 2013 WL 5935003, at *2 (5th Cir. 2013), *citing Center for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013), and *Envt'l Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008).

For declaratory relief, a plaintiff must demonstrate "that an actual case or controversy under the ADA exists." *Id.*

Standing requirements under the federal ADA and the Texas THRC are the same. *Davis*, 2012 WL 7801707, at *9, *citing Workers Comp. Comm'n v. Garcia*, 893 S.W. 2d 505, 517-18 (Tex. 1995), and *DaimlerChrysler Corp. v. Inman*, 252 S.W. 3d 299, 304-05 (Tex. 2008).

### Supplemental Jurisdiction

Under 28 U.S.C. § 1367(a),

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Title 28 U.S.C. § 1367(c) provides,

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

### Chasewood's Motions to Dismiss

The Court addresses the arguments in all three motions to dismiss concurrently.

In the first, Chasewood charges that Gilkerson, with her single visit to Chasewood's ATM and her numerous other virtually identical cases against other financial institutions filed in this district, is a "mere tester" who lacks standing and cannot obtain injunctive relief because she pleads that future visits to

Chasewood's ATM would not be as a *bona fide* patron with a likelihood of suffering a future injury, but would be to investigate it in order to instigate multiple lawsuits.[17]

Chasewood also maintains that Gilkerson cannot prevail on her prayer for a permanent injunction because she cannot establish redressability or the need for a permanent injunction.

Thus, it concludes, the Court lacks subject matter jurisdiction because Gilkerson lacks standing.

In addition Chasewood maintains that Gilkerson fails to show that she ever requested any services or accommodation from Chasewood and was denied other than on her single visit to one ATM.

The bank argues that the Court must decline supplemental jurisdiction over Gilkerson's state law claims and dismiss them because the Court lacks subject matter jurisdiction over the federal question claims. *Shelby v. Enlers*, 429 Fed. Appx. 392, 393-94 (5th Cir. June 20, 2011), *cert. denied*, 132 S. Ct. 1904 (2012).

In its second motion to dismiss, Chasewood represents that

---

[17] Chasewood makes a meritless argument that Gilkerson has failed to prove a causal connection between her disability and Chasewood's alleged violation of Title III, i.e., that her disability was a substantial motivating factor in Chasewood's purported violation. Chasewood violates the statute because its ATM violates the requirements for independent accessibility by visually impaired individuals. Gilkerson needs merely to establish her disability, Chasewood's noncompliance with the statute and its regulations, and that she was accordingly unable to access Chaswewood's services through its ATM.

according to public records obtained from the Texas Secretary of
State, BAG, whose location is not mentioned, registered to do
business in Texas on March 16, 2005 and forfeited its corporate
privileges and corporate charter for tax deficiencies[18] on May 21,
2010.   #9, Ex. A, Articles of Incorporation of Blind Ambitions
Groups; Ex. B, Forfeiture Notice.[19]

Chasewood charges that BAG lacks organizational standing.  Its
alleged diversion of resources to litigation cannot, by itself,
establish an injury in fact.  *La. ACORN Fair Hous. v. LeBlanc*, 211
F.3d 298, 304 (5th Cir, 2000); *Assoc. for Retarded Citizens of*

---

[18] Under Tex. Bus. Corp. Act art. 7.12(F)(1)(e), expired and
replaced by Tex. Bus. Corp. Act art. 11.02(B) on January 1, 2010,
the secretary of state may forfeit a charter upon receiving
certification from the comptroller that 120 days have passed since
the corporation failed to pay franchise taxes and forfeited its
corporate privileges and the corporation has not revived its
privileges).   "A corporation that has forfeited its charter
pursuant to the Tax Code [§ 171.309] is [a] 'dissolved corporation'
unless and until forfeiture has been set aside."  *Anderson Petro-
Equipment, Inc. v. State*, No. 03-13-00176-CV, 2013 WL 5858010, at
*1 (Tex. App.--Austin Oct. 22, 2013), *citing Hunter v. Fort Worth
Capital Corp.*, 620 S.W. 2d 547, 549-51 (Tex. 1981).   When a
corporation forfeits its privileges it no longer has a legal right
to assert its causes of action in court.  *Mossler v. Nouri*, No. 03-
08-00476-CV, 2010 WL 2133940, at *4 (Tex. App.--Austin, May 27,
2010).

[19] Chasewood contends that it did an internet search on April
4, 2012 that revealed the website for BAG is no longer working or
accessible and that the domain name "blindambitionsgroup.org" is no
longer owned by BAG.   Ex. C.  Plaintiff disagrees with the website
allegations and attaches to her memorandum in opposition (#16-1,
Ex.1) evidence that the website was accessible as recently as May
31, 2013.  When the Court tried, it received the message, "Internet
Explorer cannot display the web page," and was also unable to get
a diagnosis of "Connection Problems."

*Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994)("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon an organization."); *Assoc. of Community Organizations for Reform Now v. Fowler*, 178 F.3d 350, 358-59 (5th Cir. 1999)(expanding Article III injury to include an organization's litigation-related expenses "'implies that any sincere plaintiff could bootstrap standing by expending its resources in response to actions of another,"" in other words "any litigant could create injury in fact by bringing a case"). *See also Hunter I*, 2013 WL 607151 at *4 (granting motion to dismiss, agreeing that redirecting some resources to litigation and legal counseling is insufficient to impart standing upon Blind Ambitions, but noting, "to the extent that diverting funds to Blind Ambitions' efforts to locate and identify noncompliant ATMS constitutes an injury, causation is lacking because there is no allegation that Blind Ambitions 'would not have undertaken the same efforts in the absence of the alleged illegal act by the defendant[].'").[20]  BAG does not allege that it has been harmed by

---

[20] This Court would point out that in *Hunter I* the Honorable Sidney A. Fitzwater allowed the Plaintiff to replead and in *Hunter II*, 2023 WL 4052411, he denied the bank's subsequent motion to dismiss on the same grounds.  He found that Hunter's sworn declaration that she intended to visit the ATMs in dispute because she was often in the vicinity of them was uncontradicted and sufficient to create "intent to return" standing for injunctive

-37-

Chasewood's actions, only that it generally expends resources for enforcement of the ADA. The amended complaint fails to show injury-in-fact sufficient to confer organizational standing on BAG.

Nor, Chasewood argues, does BAG have representational standing, which requires a showing that (1) its members independently meet Article III standing requirements, (2) the interests the association seeks to protect are germane to the purpose of the organization, and (3) neither the claim asserted nor the relief requested requires participation of individual members. *Retarded Citizens of Dallas*, 19 F.3d at 244. BAG fails to identify any specific employees, officers, or members (other than Gilkerson) who tried to use any Chasewood ATM nor any members who have suffered any concrete harm. Chasewood maintains that because Gilkerson lacks standing, BAG cannot establish representational standing.

Chasewood furthermore asserts that because Texas law applies the same standing principles as federal law, BAG's state-law claims should be dismissed on the same grounds as its ADA claim. *Heckman v. Williamson County*, 369 S.W. 3d 137, 154-55 (Tex. 2012)(Texas standing doctrine parallels the federal test for Article III

---

relief. Because Hunter proved she had standing, and because she was a member of Blind Ambitions, the judge found that Blind Ambitions had associational standing. 2013 WL 4052411, at *6, *quoting Nat'l Rifle Assoc. of Am., Inc. v. Bureau of ATF&E*, 700 F.3d 185, 191 (5th Cir. 2012)(*Hunt v. Washington State*, 432 U.S. at 343, "only requires that 'at least one member of the association have standing to sue in his or her own right.'").

standing).

Gilkerson's amended complaint at ¶ 54, states that she will visit the ATM in the future because "she wants to identify convenient accessible ATM options within the geographic zone that she typically travels as part of her everyday and weekly activities and she wants to increase ATM accessibility for the blind community, generally, and in accordance with her fiduciary obligations as a class representative." Chasewood argues that neither Gilkerson nor BAG has any fiduciary duties to a class that does not exist, not to mention relating to claims that neither has standing to pursue. Chasewood insists that the assertion does not change her status as a tester, and as such, her lack of an injury-in-fact. The allegation strongly suggests that she does not seek to use any ATM as a bona fide patron, but instead only as a tester for the purpose of filing more lawsuits. She lacks standing in that she has alleged only one incident at one ATM with no apparent changes and an uncertain intention to return for any purpose other than investigation of compliance; in sum, she did not suffer an injury-in fact.

Because Gilkerson has already amended her complaint, Chasewood claims that the dismissal should be with prejudice. *Gonzales v. Bank Of America Ins. Servs.*, 454 Fed. Appx. 295, 302 (5th Cir. 2011)(the Fifth Circuit upholds "the denial of leave to amend where the party seeking leave to amend has not clearly established that

-39-

he could not reasonably have raised the new matter prior to the trial court's merits").

In its second amended motion to dismiss (#17), Chasewood notes that in Gilkerson's Responses to Defendant's First Request of Production and Interrogatories (Ex. 3), Plaintiff claims that she visited the ATM in dispute twice, once "on or about June 25, 2012," and again "on July 20, 2012, at approximately 12:20 p.m." and that the ATM did not have functional voice guidance features required by the ADA and THRC.  In response Chasewood claims that its ATM was in full compliance with the ADA over one month before the visits Gilkerson identifies and that it continues to be in compliance through the filing of #17, and that any problem she had in operating the machine would have been due to her, not to noncompliance by Chasewood.  It also argues that regulation 28 C.F.R. § 36.211 not only makes it unlawful for a public accommodation to discriminate on the basis of disability, but also expressly provides, "This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs."[21]  In its appendix to the Regulations, the Department of

_____

[21] In their response (#30 at pp. 5-6), Plaintiffs submit the next two lines of the DOJ comment to § 36.211: "However, allowing obstructions or 'out of service' equipment to persist beyond a reasonable period of time would violate this part, as would repeated mechanical failures due to improper or inadequate maintenance.  Failure of the public accommodation to ensure that accessible routes are properly maintained and free of obstructions, or failure to arrange prompt repair of inoperable elevators or other equipment intended to provide access, would also violate this

Justice states that 28 C.F.R. § 36.211(b) is "intended to clarify that temporary obstructions or isolated instances of mechanical failure would not be considered violations of the [ADA] or this part" because "[i]t is, of course, impossible to guarantee that mechanical devices will never fail to operate." *Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, originally published on July 26, 1991, 28 C.F.R. Pt. 26, App. C (Mar. 15, 2011). Courts accordingly have held that an isolated or temporary hindrance to access does not give rise to a claim under the ADA or the state equivalent. *See, e.g., Foley v. City of Lafayette, Inc.*, 359 F.3d 925, 929 (7th Cir. 2004); *Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 59 (D.D.C. 2010); *Thill v. Olmstead County*, No. 08-CV-4612 (PSJ/JSM), 2010 WL 3385234, at *6 (D. Minn. Aug. 14, 2010)(holding "[o]n this record, even if the door was not in compliance with the ADA when [plaintiff] was injured, given Olmstead County's maintenance practices and its prompt response to [plaintiff's] complaint about the door, a reasonable jury would not find defendants liable under the ADA for the door's mechanical failure on" a single occasion.).[22]

_____

part." Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544-01 (July 26, 1991).

[22] Plaintiffs respond that *Thill* and *Foley* addressed whether a single isolated incident of noncompliance violated the ADA in the context of a summary judgment, not a motion to dismiss, and that

Chasewood again maintains that neither Gilkerson nor BAG has alleged a plausible intention or desire to return to the ATM as required under the ADA, and that her pleading and the facts in evidence from her other lawsuits reflect that a return visit is highly unlikely. Moreover, the potential for abuse is reflected in Gilkerson's numerous lawsuits, not to mention those of her attorneys, filed across the country. BAG has neither organizational nor representational standing to pursue its ADA claim. Because Gilkerson lacks standing to prosecute her ADA claim, she also lacks standing for her THRC claims. Thus the Court should also decline to exercise supplemental jurisdiction over Gilkerson's state law claims and her complaint should be dismissed for lack of standing because neither she nor BAG can establish an injury-in-fact. #17-4, Ex. 4 (Affidavit of Valentin Berea attesting that his company replaced the ATM in dispute with a brand new ATM on May 23, 2012 to insure full compliance with the ADA standards, and that there had been no other complaints about the machine's compliance).

---

Gilkerson visited the subject ATM twice, the visits being one month apart, and found the same inaccessibility violation, i.e., no functional voice guidance function, and on the second visit there was also no functional audio guidance system. Moreover an investigation revealed that other ATMs on Chasewood's network were also in violation of Chapter 707 of the 2010 Standards, and that Chasewood lacked a policy for keeping its ATMs in timely compliance. #30 at p. 6; Ex. 4, Decl. of investigator Ross Monsen (find both the subject ATM and another Chasewood ATM in violation of ADA).

Given the thirty-eight miles between Gilkerson's residence[23] and the ATM at issue, Chasewood observes that Gilkerson, who does not have an account with Chasewood, has not explained why that ATM is more desirable than any other facility run by any of the other financial institutions that she has sued.  It states that she has sued at least seventeen other banks with ATMs closer to her home and provides a chart in support. Gilkerson has not patronized the ATM other than the two visits she admits she made.  Nor does she provide a rational reason why she would go past hundreds of ATMs on the way to the Chasewood ATM in dispute, including at least seventeen that she claims are in the geographic zone or her regular travels and the fact that she appears from her numerous lawsuits to regularly use a number of other ATMS.  She cannot manufacture standing by her indefinite statement that she plans to return to the ATM.  She fails to provide any specific facts showing the frequency of her travel near the ATM.  Her numerous lawsuits also

---

[23] Chasewood states that on the average "courts have determined that a distance of more than 50 to 100 miles clearly fails to satisfy the proximity element." *Reviello v. Phila. Fed. Credit Union*, Civ. A. No. 12-5-8, 2012 WL 2196320, at *4 5(E.D. Pal June 14, 2012)("It has been held that a distance pf more than 100 miles clearly fails to satisfy the proximity element. . . . The proximity standard is not clear-cut and courts consider the type of accommodation and whether it caters to travelers. . . . In this case, the plaintiff lives over fifty miles from the defendant's ATM while his own bank is located within three miles of his house. . . . Without more, plaintiff's proximity to the ATM in question does not clearly establish a likely intent to return.").
    Plaintiff responds by pointing out that her residence is only thirty-eight miles form the ATM in question.

undermine a finding that she is likely to return to Chasewood's ATM and to incur any future injury .

BAG fails to allege any facts to show that it has organizational standing, i.e., that it used the Chasewood ATM or that it has been harmed in any way by its alleged noncompliance on its own behalf.  BAG merely asserts that "it has had to redirect resources to support its efforts related to the enforcement of the laws at issue in this case."  Nor has it shown that it has associational standing to bring suit on behalf of its members because it  has not identified any of its member that has standing nor can it assert its claims or receive the relief requested without participation of its members.  *Hunt v. Washington State Apple*, 432 U.S. at 343; *Association for Retarded Citizens*, 19 F.3d at 244.  Organizations do not visit ATMs.

Generally when federal claims are dismissed before trial, a court that had supplemental jurisdiction under 28 U.S.C. § 1367(c) over state-law claims as a general rule, which is not always mandatory depending on balancing factors, should dismiss them without prejudice. *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)(*citing Newport Ltd. v. Sears Roebuck and Co.*, 941 F.2d 302, 307 (5th Cir. 1991), and *Parker & Parsley Petroleum Co. v. Dresser Industries*, 971 F.2d 580, 587 (5th Cir. 1992), *overruled on other grounds, Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 n.11 (5th Cir. 2003).  When only state-law claims remain in a federal

question case, the Supreme Court has opined that "a federal court should hesitate to exercise jurisdiction over state claims" because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Moreover, Plaintiffs lack standing to pursue the state law claims as well as the ADA claim.

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law; (3) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Chasewood argues that all these factors weight in favor of this Court's declining to exercise its jurisdiction: Gilkerson raises novel issues of state law under the THRC since its provisions have only been in effect since March 15, 2012 and there is no Texas decision on the questions raised yet; state law under the THRC is the only claim left; and limited discovery has taken place and novel issues of state law should be decided in state court.

**Plaintiffs' Opposition to**

**the Second Amended Motion to Dismiss (#30)**

-45-

Plaintiffs contend that Chasewood's argument that the ATM was inaccessible only for a short time is "a question of fact not properly adjudicated on a motion to dismiss." #30 at p. 3., *citing Klaus v. Sovereign Bank, National Assoc.*. No. 1:12-cv-2421, 2013 WL 2040334, at *6 (M.D. Pa. Apr. 11, 2012)("courts have found that whether interruptions in access are 'isolated or temporary, and thus come with the protections of 28 C.F.R. § 36.211(b) [ADA "does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs"] present questions of fact that are not properly subject to disposition through a motion under Rule 12(b)(6).")[24], *adopted*, 2013 WL 2039657 (M.D. Pa. May 14, 2013).

Insisting she has stated claims for ADA discrimination, Gilkerson emphasizes that she visited the ATM in dispute twice, a month apart, and that it had no functional voice-guidance feature either time and no functional audio guidance feature in December 2012 (declarations of Gilkerson, Ex. 2, witness Don Harvey, Ex. 3, and investigator Ross Monsen, Ex. 4); that an investigation established that other ATMs in Defendant's network violate the ADA accessibility laws (Am. Complaint at ¶ 56; Ross Monsen declaration); and (3) that Chasewood has no plan or policy

_____

[24] *Citing Chapman v. Pier 1 Imports (U.S.), Inc.*, 870 F. Supp. 2d 995, 1009 (E.D. Cal. 2012); *Sparks v. City of Peoria*, No. 09-1159, 2009 WL 3764032, at *4 (C.D. Ill. Nov. 10, 2009); *Eiden v. Home Depot USA, Inc.*, No. CIV504-977 LKK/CMK, 2006 WL 1490418, at *13 (E.D. Cal. May 26, 2006).

reasonably calculated to cause its ATMs to be in timely compliance with Chapter 7 of the 2010 Standards or for periodic monitoring. Plaintiffs have not alleged that the noncompliance was temporary or isolated, the facts are in dispute, and the issue should not be decided without a full factual record.    They also object that Chasewood has refused to respond to any fact discovery propounded by Plaintiffs until the Court rules on the motions to dismiss. (The Court has previously denied Chasewood's motion to stay discovery (#23, 29).)  Plaintiffs point out that Chasewood has not submitted any evidence that the ATM's accessibility problems have been isolated and temporary or that the malfunction was due to maintenance or repairs.

Gilkerson claims that from the evidence she has put in the record she can satisfy both tests for injury-in-fact: the intent-to-return to the noncompliant public accommodation and the deterrent effect doctrine.  Her residence is less than fifty miles from the subject ATM.  While her lack of past patronage works against her, she argues it should not be given significant influence considering that the ATM is inaccessible to her.  She has claimed that she has future plans to use it and that she frequently travels in the area and is often in its geographic zone.  While she cannot make a concrete plan to use an ATM that is not accessible to her, she has stated that she intends to return in her effort to increase ATM accessibility for the blind generally and in

accordance with her fiduciary obligations to the putative class.
*Hunter II*, 2013 WL 4052411 at *3 ("The court's determination that
Hunter has proved that she will return to the ATMs at issue is
based primarily on her [uncontroverted] sworn declaration that she
'intend[s] to continue to visit the specific BB&T ATMS identified
. . . because [she is] often in the vicinity of those ATMs and
[she] desire[s] to have access to the banking services that are
offered at those ATMs."). Chasewood's argument that she had not
shown why its ATM is more desirable than one close to her home is
illogical and if accepted, would  nullify ADA's accessibility
requirements because there would be no incentive for an ATM
operator to comply if there were an accessible ATM nearby.
Furthermore courts have routinely found that "testers" or serial
plaintiffs have standing in Title III accessibility cases. *Access
for the Disabled*, 2012 WL 2917915, at *2-3; *Segal v. Rickey's
Restaurant and Lounge, Inc.*, No. 11-61766-CIV, 2012 WL 2393769, at
*7 (S.D. Fla. June 25, 2012)("Plaintiff is not stripped of standing
by virtue of the number of lawsuits he has filed."); *Access 4 All,
Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, at *7 ("Indeed,
because Plaintiff Esposito is a frequent litigant with the stated
goal of ensuring ADA compliance, his claim of intent to return to
the Hampton Inn to do additional examinations is made more, not
less credible."); *Betancourt*, 732 F. Supp. 2d at 710 ("A disabled
tester who experiences the discrimination prohibited by the ADA has

standing to seek relief.").

As for Blind Ambitions, Plaintiffs argue that because its member Gilkerson has standing, the Court should find that Blind Ambitions has representational standing. Under the test for representational standing established in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. at 343, Gilkerson has standing to sue and has sued in her own right; the interests sought to be protected are germane to Blind Ambitions' purpose of advocating for the civil rights of visually impaired individuals to have the same access to goods and services that are generally available to the American consuming public. As for the third prong, a prudential limitation, neither the claims asserted nor the relief requested by Blind Ambitions requires participation of individual members of this suit because it prays solely for injunctive relief under the ADA and Texas state statutes, which does not require the participation of all of Blind Ambitions' individual members. *Building and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Dev. Inc.*, 448 F.3d 138, 150 (2d Cir. 2006)("'[W]here the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the *Hunt* test may be satisfied."), *citing Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004); *cited for that proposition in Access 4 All, Inc. v. G&T Consulting Co., LLC*, No. 06 CIV 13736 (DF), 2008 WL 851918, at *5 (S.D.N.Y.

-49-

Mar. 28, 2008).

### Chasewood's Reply (#32)

Chasewood asserts that Gilkerson has filed seven more class action suits against financial institutions since June 14, 2013, when Chasewood filed its seconded amended motion to dismiss.

Chasewood also tries to distinguish this case from *Hunter II* to favor its defense. It points out that the Chasewood ATM is three times farther from Gilkerson's residence that the ATM in *Hunter II* was from the plaintiff's home in that suit. Second, Gilkerson does not have an account with Chasewood, while the *Hunter II* plaintiff did with the financial institution defendant, BB&T. Third, Chasewood has shown that it brought its ATM into compliance with the ADA before Gilkerson's claimed visits, where there was no such evidence in *Hunter II*. Last, Gilkerson has already filed 31 nearly identical lawsuits to date, while the plaintiff in *Hunter* filed only 15 by the time the standing issue was decided in that case.

Chasewood argues that this case is more analogous to *Molski v. Mandarin Touch Restaurant*, 385 F. Supp. 2d 1042 (C.D. Cal. 2005)(dismissing case because plaintiff was a serial litigator and his multiple ADA suits undermined the sincerity of his intention to return to each out-of-compliance business and the likelihood of future harm). The California district court also found that the 116-mile distance between the plaintiff's residence and the

defendant's restaurant made injury unlikely and the plaintiff's claim that he had driven up the California coast 15-20 time in the last two years "insubstantial."  *Id.* at 1046.

### Court's Decision

Plaintiff and BAG have not responded to Chasewood's charge that BAG forfeited its company charter for tax deficiencies on May 21, 2010, supported by the copy of the Forfeiture Notice.  The Court will therefore require BAG to file within ten days evidence that it has a charter in effect allowing it to sue in Texas.

A second issue, about which there is an ongoing factual dispute that will have to be decided later in this litigation, is whether Chasewood's ATM at 8500 Cypresswood Drive, Spring, Texas 77379 was at the time of Plaintiff's visit and is now in compliance with the ADA's requirements for ATMs or whether there is a live case or controversy.  To obtain injunctive relief, the plaintiff's claims cannot be moot; her personal interest in the litigation must be live not only when she commenced the suit, but throughout the litigation.  "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects.'" *Lujan*, 504 U.S. at 564, *quoting City of Lost Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997)(noting that a Title III "plaintiff seeking injunctive relief based on an alleged past wrong must show that

there is a real or immediate threat that he will be wronged again"
and finding that plaintiff's death made any continuing or future
injury impossible).

The class action allegations in the First Amended Complaint
assert claims against Chasewood's network of ATMs, while Gilkerson
has only alleged facts supporting an injury-in-fact from the single
ATM located at 8500 Cypresswood Drive, Spring, Texas 77379.
Because no class has been certified yet and Rule 23 has not been
satisfied, the Court restricts its current standing review to the
single ATM.

Plaintiff has alleged and/or presented evidence that Chasewood
failed to comply with the ADA and the 2010 standards because its
ATM lacked voice guidance function on both her visits and an
functional audio guidance on her second.  Thus she has adequately
pleaded a concrete, particularized injury-in-fact to a legally
protected interest fairly traceable to, and thus causally connected
to, the challenged action of the defendant in the past.  At issue
is whether she will continue to be harmed in the future to warrant
injunctive relief and thereby meet the third factor, a likelihood
that the injury will be redressed by a favorable decision.

A number of courts, including district courts in the Fifth
Circuit, have applied a four-factor proximity test to determine if
a plaintiff has intent to return to a noncompliant public
accommodation:  (1) the proximity of plaintiff's residence to the

public accommodation; (2) the plaintiff's past patronage of the public accommodation; (3) the definitiveness of the plaintiff's plan to return; and (4) the frequency of plaintiff's nearby travel. *See, e.g., Access 4 All*, 2005 WL 2989307, at *3; *Davis*, 2012 WL 7801700, at *6; *Hunter*, 2012 WL 7004154, at *5; *Raviello*, 2012 WL 2196320, at *4; *Harty*, 2011 WL 2415169, at *5. Applying the test to the subject ATM and at this stage taking the First Amended Complaint's allegations as true, the Court notes that Gilkerson lives 38 miles from it, and thus falls within the 50-mile limit some courts have applied as the requisite proximity of the challenged place of noncompliant public accommodation to the plaintiff's residency. *See, e.g., Access 4 All*, 2005 WL 2989307, at *3; *Davis*, 2012 WL 7801700, at *6; *Raviello*, 2012 WL 2196320, at *5. In her straight-forward submissions, Gilkerson concedes that she was not a patron of the bank in the past and does not have an account at Chasewood. Moreover her "plan to return" is not very definite (i.e., no specific date or time). These facts weigh against a finding of standing. Nevertheless, with a supporting sworn declaration, she does assert that she daily and weekly travels to that zone where the ATM is located. Her sworn declaration further states, "I will continue to use the Subject ATM. I want to identify convenient accessible ATM options within the geographic zone that I typically travel as part of my regular activities and I want to increase ATM accessibility for the blind

community, generally."  #30, Ex. 2.  The Court finds no evidence that the suit is frivolous or of "trumped up claims of injury," as in the multiple suits filed by the plaintiff in the *Molski* litigation.  In sum, it finds Gilkerson pleading of standing here is a "close call" under the proximity test.  *See, e.g., Hunter v. First United Bank & Trust Co.*, No. 4:12-CV-374, 2012 WL 7004154, at *6 (E.D. Tex. Dec. 11, 2012)("Hunter's proximity to and statements in the Amended Complaint that she regularly travels in the vicinity of the Subject ATM," plus her claim that she visited the ATM "multiple times since March 15, 2012" are "sufficient to evidence a plan to return"), *adopted*, 2013 WL 419227 (E.D. Tex. Feb. 1, 2013); *Betancourt*, 732 F. Supp. 2d at 704 ("allegation that plaintiff would return to the public accommodation 'soon' was sufficient"), *citing Sevens v. Premier Cruises*, 215 F.3d 1237 (11th Cir. 2000).

While questions have justifiably been raised about how specific Gilkerson's allegations about her intent to return are, as noted several courts in Texas in the Fifth Circuit have relied on the deterrent effect doctrine in ruling that a disabled individual suffers an ongoing, cognizable injury if he is deterred from visiting a noncompliant accommodation because it violates that ADA. *See, e.g., Betancourt*, 732 F. Supp. 2d at 709; *Kramer v. Lakehills South, LP*, 2014 WL 51153 at *4-5; *Hunter II*, 2013 WL 4052411, at *3.  Gilkerson has alleged that she has visited the subject ATM

twice, that she knows the ATM is noncompliant, that she would be visiting it again, and that she does not need to "engage in a futile gesture" before seeking an injunction.   Gilkerson has submitted declarations of her own, of witness Don Harvey, and of investigator Ross Monsen to show that she twice attempted to use the subject ATM, that an investigation established that other ATMs in Defendant's network violate the ADA accessibility laws (*see also* Am. Complaint at ¶ 56), and that Chasewood has no plan or policy reasonably calculated to cause its ATMs to be in timely compliance with Chapter 7 of the 2010 Standards or for periodic monitoring.

In *Betancourt,* 732 F. Supp. 2d at 707, a frequently cited case, the Texas federal district court focused on the word "opportunity" in 42 U.S.C. § 12101(a)(7) and (8), stating the ADA's goals:

> The Congress finds that . . .
>
> (7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; and
>
> (8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expense resulting from dependency and nonproductivity.

The court emphasized that "[t]he ADA provides a private cause of action to 'any individual who is being subjected to discrimination" and expressly provides that "it shall be discriminatory to subject

-55-

an individual . . . on the basis of disability . . . *to a denial of
the opportunity* of the individual or class to participate in or
benefit from the goods, services, facilities, privileges,
advantages, or accommodations of an entity.'" 732 F. Supp. 2d at
707, *quoting* 42 U.S.C. § 12182(a) and (b). Where a public
accommodation's noncompliance is ongoing, the disabled plaintiff
"suffers an ongoing injury so long as she is effectively denied the
opportunity" to participate in or benefit from the services and
facilities of the entity. *Id.* Observing that some courts have
appropriately applied the deterrent effect doctrine to such a Title
III injury and found that "a plaintiff need not engage in the
futile gesture of visiting an accommodation she knows to be
discriminating against her in order to establish standing," the
court examined several decisions by the United States Supreme Court
that "support a broader view of injury under Title III." *Id.* at
707-08. For example in *Friends of the Earth, Inc. v. Laidlaw
Environmental Services*, 528 U.S. 167 (2000), the high court found
that plaintiffs' allegations that they "would like to fish, camp,
swim and picnic in and near a river downstream from the defendant's
facility," but would not because it was undisputed that the
waterway was polluted from that facility's discharge, "could not be
equated with the speculative 'some day' intentions to visit
endangered species halfway around the world that was held
insufficient in *Lujan*." *Betancourt*, 732 F. Supp. 2d at 709. The

-56-

Supreme Court found that it was "entirely reasonable" that the illegal discharge of pollutants would cause nearby residents to limit their use of the river and subject them to economic and aesthetic harm, and if proven true, was sufficient to constitute an injury-in-fact. *Id., quoting id.* at 184-85.  The *Betancourt* court analogized that it was "entirely reasonable" that a disabled plaintiff "would be deterred from visiting a public accommodation that is violating Title III," and it concluded that such a claim "alleges sufficient present injury in fact for prospective equitable relief." *Id.* at 709-10.  Moreover, the court proclaimed that "the fact that a disabled plaintiff in a Title III case is a tester does not change the analysis or outcome." *Id.* at 710, *citing Havens Realty Corp.* 455 U.S. 363, and *Evers v. Dwyer*, 358 U.S. 202 (1958)(finding that there was still a "case or controversy" in the civil rights context where a black plaintiff, who was ordered to move to the rear of a public bus or face arrest, refused and left the bus because "'[a] resident of a municipality who cannot use transportation facilities therein without being subjected by statute to special disabilities necessarily has, we think, a substantial, immediate and real interest in the validity of the statute which imposes the disability. *That the appellant may have boarded this particular bus for the purpose of instituting this litigation is not significant.'*". *Betancourt*, 732 F. Supp. 2d at 710, *quoting Evers*, 358 U.S. at 204.).  The *Betancourt* judge

-57-

concluded, "Thus, a disabled tester who experiences the discrimination prohibited by the ADA has standing to seek relief." *Id.*, *citing Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004)("recognizing tester standing to seek injunctive relief under Title II [of the ADA] related to City's bus system.").

Thus the Court finds that the First Amended Complaint of Gilkerson, whose allegations indicate that she went to Chasewood's ATM as both a tester and a patron and would continue to do so, has established standing under the deterrent effect doctrine in this action. *See also Kramer*, 2014 WL 51153, at *5 (finding sufficient the plaintiff's pleading that she visited the shopping center at issue, found a number of ADA violations that deprived her of use and enjoyment of the goods and services of the stores, claimed that she would like to visit the shopping center again during a planned trip to Austin in December 13, and she noted that "it would be a futile gesture to visit Defendant's mall unless and until it is brought into compliance"); *Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64-65 (1st Cir. 2005)(finding sufficient for standing plaintiff's allegations that he visited defendant's cruise ship, had been subjected to barrier discrimination that denied or limited his ability to visit or use the property and endangered his and other disabled persons' safety, and that he intended to return; court found he did not have to engage in the futile gesture of traveling aboard the ship again to

-58-

establish standing).

Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although a number of courts addressing Title III cases have been skeptical, and even hostile. *See* Lee, *Giving Disabled Testers Access to Federal Courts*, 19 Va. J. Soc. Pol'y & L. at 321-23; Johnson, *Testers Standing up for Title III of the ADA*, 59 Case W. Res. L. Rev. at 689-702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.'" *Betancourt*, 732 F. Supp. 2d at 701, *quoting Molski*, 500 F.3d at 1062.

Blind Ambitions seeks only associational (representational) standing, not organizational standing on its own behalf. Am. Complaint at p. 12 n.8. Because the Court finds at this stage that Plaintiff has adequately pleaded Gilkerson's standing as to the one ATM, Blind Ambitions satisfies the first factor for representational standing under *Hunt,* based on Gilkerson's active membership in the organization. Regarding the second prong, the interest at stake in this suit, accessibility of the visually impaired to the ATM, is germane to Blind Ambitions' stated purpose, "advocacy regarding the accessibility of goods and services to the

blind community" (#8 at ¶ 2). "[T]he germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose." *Assoc. of Am. Physicians & Surgeons*, 677 F.3d at 550 n.2, *citing Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2d Cir. 2006). The prudential third prong, which focuses on matters of administrative convenience and efficiency," is also satisfied because Blind Ambitions seeks injunctive and declaratory relief, which will not require each member's proving his or her specific damages, but only a few members' participation. *Davis v. American National Bank of Texas*, No. 4:12-CV-382, 2012 WL 7801700, at *8 (E.D. Tex. Dec. 11, 2012), *adopted*, 2013 WL 1195695 (E.D. Tex. Mar. 22, 2013); *Assoc. of American Physicians and Surgeons*, 627 F.3d at 552 ("as long as resolution of the claims benefits the association's members and the claims can be proven by evidence from representative injured members, without a fact-intensive inquiry, the participation of those individual members will not thwart associational standing."); *Nat'l Solid Wastes Mgmt. Assoc. v. City of Dallas*, Civ. A. No. 3:11-CV-3200, 2012 WL 4893016, at *5-6 (N.D. Tex. Oct. 16, 2012).[25] Thus the Court finds that Blind Ambitions

---

[25] The Court finds that Blind Ambitions has not adequately pleaded organizational standing, i.e., standing on its own behalf. As noted, the statement that it had to divert its resources to this litigation is not sufficient to establish standing. *ACORN*, 178 F.3d at 358; *Assoc. for Retarded Citizens*, 19 F.3d at 244. It fails to show that these costs were due to Chasewood's conduct. *N.A.A.P.C. v. City of Kyle, Texas*, 626 F.3d 233, 238-39 (5th Cir.

has representational standing to sue here.

   Accordingly, for the reasons stated above, the Court

   ORDERS that Chasewood's three motions to dismiss (#7, 9, and 17) are DENIED.  The Court further

   ORDERS BAG to file within ten days evidence that it has a corporate charter in effect allowing it to sue in Texas.  Finally, the Court

   ORDERS that this case is REFERRED to United States Magistrate Judge Frances Stacy to establish a new docket control schedule.

   **SIGNED** at Houston, Texas, this 27ᵗʰ day of February, 2014.

                    _____
                         MELINDA HARMON
                    UNITED STATES DISTRICT JUDGE

---

2010), *cited for that proposition, Davis v. First National Bank of Trenton*, No. 4:12-CV-396, 2012 WL 7801707, at *7 (E.D. Tex. Dec. 11, 2012), *adopted*, 2013  WL 1195710 (E.D. Tex. Mar. 22, 2013). For organizational standing, Blind Ambitions must allege facts showing in addition that the diversion of its resources "has concretely and 'perceptible impaired' its ability to carry out its purpose."  *Hunter v. Branch Banking and Trust Co.*, 2013 WL 607151 at *3, *citing Havens Realty*, 455 U.S. at 379.